AID TO ARTISANS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6215–77X.     Filed November 20, 1978.

*William J. Lehrfeld* and *James L. Wilson,* for the petitioner.
*Kevin M. Bagley,* for the respondent.

## OPINION

GOFFE, *Judge:* Petitioner has instituted this action pursuant to section 7428, I.R.C. 1954,[1] for a declaratory judgment that it qualifies as an organization described in section 501(c)(3) and is entitled to an exemption from income tax under section 501(a). The issue for our decision is whether petitioner is operated exclusively for exempt purposes within the meaning of section 501(c)(3).

Both parties agree that the jurisdictional requirements of section 7428 and Rule 210(c), Tax Court Rules of Practice and Procedure, have been met. Pursuant to Rule 217(b)(1), Tax Court Rules of Practice and Procedure, respondent has filed with this Court the entire administrative record, which has been appropriately certified as to its genuineness. No evidence other than the administrative record has been presented; pursuant to Rule 217(b)(2), Tax Court Rules of Practice and Procedure, and the parties' joint motion, the case was submitted under Rule 122, Tax Court Rules of Practice and Procedure.

Aid to Artisans, Inc. (hereinafter petitioner or Aid to Artisans), was incorporated in October 1975 by James S. Plaut under the chapter of Massachusetts law entitled "Corporations for Charitable and Certain Other Purposes." Mass. Ann. Laws. ch. 180 (Michie/Law. Co-op). Petitioner established Wilmington, Mass., as its principal place of business.

In its articles of organization, Aid to Artisans listed the following purposes for which it was organized:

The prosecution of charitable, scientific and educational purposes, with no part of the net earnings of the Corporation to inure to the benefit of any private individual, nor any substantial part of the activities of the Corporation to be the carrying on of propaganda, or otherwise attempting, to influence legislation, and with no participation in, or intervention in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office, and, in particular, the promotion, improvement and expansion of the handicraft output of disadvantaged artisans in developing societies of the world by providing assistance and support in the areas of marketing, quality control standards, financing and related areas.

In August 1976, petitioner's foregoing statement of purpose was amended by the addition of the following:

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

Notwithstanding any other provision of these articles, the Corporation's purposes shall not include and the Corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law) or (b) by a corporation, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law).

In April 1976, Aid to Artisans filed a properly completed Form 1023, "Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code," with the Internal Revenue Service Exempt Organization Division, Boston, Mass. In its application, petitioner was required to provide a description of the activities carried on or to be carried on and of the services performed or to be performed by the organization. Petitioner's answer included the following paragraphs:

It is well documented that the pace of industrial growth has brought about a corresponding diminution both in the production of handicraft items in many areas and the quality thereof. Many of these handicrafts have played a critical role in the history and culture of the regions in which they are created and their near extinction has prompted efforts to support the artisans who create them.

The organization has been organized to carry on a number of overlapping objectives designed to encourage the preservation of such handicrafts. The first is to assist disadvantaged artisans, in the United States and abroad, in marketing their handicrafts. The second is to educate the American public in the artistry, history and cultural significance of such handicrafts. The third is to use any surplus, generated through the sale of such handicrafts to other tax-exempt organizations, to provide technical and other assistance to the artisans for the perpetuation of their handicraft activities.

In the text of an exhibit attached to the application, petitioner elaborated on its objectives:

The Foundation anticipates the following kinds of assistance. The first step is that of assistance in marketing selected handicrafts. The Foundation is presently selecting and purchasing for sale in museum and other nonprofit shops or agencies previously described representative crafts from such disadvantaged communities. The second step involves the exposure of both the crafts and artisans responsible for their products through such shops and agencies. Such exhibitions will focus public attention in the U.S. on the work of such artisans and the resultant need for support. In addition the Foundation contemplates the dissemination of a newsletter to its members and to museums, libraries, foundations and other interested entities which will also focus on disadvantaged artisan communities and the need to support them. The third step will be attained at such time as the Foundation has reached a break-even point. At such time as a surplus of funds is generated, monies will be

allocated to provide technical assistance and assistance in material procurement for these disadvantaged artisans. The nature of the assistance will depend in large measure on the kinds of problems which the artisans encounter but might well include setting up a kiln, or the purchase of looms or similar equipment. It is also envisioned that consultants may be retained, particularly in the areas of technical and design improvement.

Another item on the application requested that petitioner disclose whether it did or would limit its benefits, services, or products to specific classes of individuals. Petitioner answered "yes" and responded as follows to a request that petitioner explain how the recipients or beneficiaries would be selected: "Recipients will include disadvantaged artisans in the United States and in developing societies throughout the world." In the text of an exhibit attached to the application, petitioner elaborated on its method of selection:

The criteria used to determine who is a "disadvantaged artisan" will be determined primarily by the craft selection from disadvantaged communities in the United States and in other parts of the world. The criteria employed to determine what is a disadvantaged community will include socio-economic data from the respective communities with particular emphasis on life styles and disposable income.

Also attached to petitioner's application was a purchase order for Haitian handicrafts indicating the following:

PURCHASE ORDER NUMBER HAI–101

| Quantity | Unit | Description | Price | Amount |
|---|---|---|---|---|
| 200 | Dozen | Sisal animals | $2.50/dozen | $500 |
| 20 | Dozen | Sisal giraffes | 2.75/dozen | 55 |
| 400 | Each | Banana bark place mats | .50/each | 200 |
| 10 | Dozen | Voodoo dolls—medium | 8.00/dozen | 80 |
| 100 | Each | White miniature chairs (wooden) | 1.25/each | 125 |
| 10 | Dozen | Voodoo dolls—small | 5.00/dozen | 50 |
| | | | | 1010 |

In response to the application for exemption filed by Aid to Artisans, respondent submitted 20 requests for additional information. Three particularly pertinent requests made by respondent and the corresponding responses supplied by petitioner are reproduced below.

(1) You state that you will assist disadvantaged artisans from disadvantaged communities and that the criteria employed to determine what is a disadvantaged community will include socio-economic data from the respective communities with particular emphasis on life styles and disposable income.
(a) Specifically explain what the criteria are for determining who is a

disadvantaged artisan and what is a disadvantaged community. Submit the socio-economic data and information on life styles and disposable income that you refer to.

(b) State who determines whether an artisan and a community are disadvantaged.

(c) Show that these disadvantaged artisans cannot provide the basic necessities of life for themselves.

(d) State where these disadvantaged communities are located and indicate whether they have been officially classified as disadvantaged, as for example, by a governmental agency.

(e) State whether you will also market the handicrafts of artisans who are *not* disadvantaged.

(1) (a)—(d): these questions are all related to the determination of the disadvantaged artisan and the disadvantaged community. For many years there have been in existence accepted criteria for measuring socio-economic conditions. Various domestic and international agencies are accustomed to identifying minimal standards of living, below which communities are deemed to be disadvantaged. Agencies involved in such statistical analysis include the following: Bureau of Indian Affairs, Agency for International Development in the U.S. State Department, World Bank, Organization of American States and the agencies of the United Nations involved in relief and development, such as UNIDO, ILO, WHO and UNESCO. These agencies have determined for the Foundation what communities are disadvantaged. The amount of assistance being received by these communities bears witness to their inability to provide the basic necessities of life. Examples of such preindustrialized "third world" countries falling below such poverty levels include Haiti, Guatemala, Pakistan, Bangladesh and India. Handicrafts have already been ordered from the first two countries so designated. What each of these communities has in common is that handicrafts are central to its socio-economic structure and provide a form of employment of millions of persons.

(1) (e): The Foundation will not market the handicrafts of artisans who are not disadvantaged.

(2) Please explain in detail the craft selection and marketing process.

(2) The craft selection will be administered by principals of the Foundation, under the direct supervision of its President. In most instances crafts will be acquired directly from craft cooperative groups, which in certain instances function in cooperation with national craft agencies operating in the constituent countries. * * *

(3) Will the crafts be resold only through museums and other non-profit shops or agencies or will they also be resold through regular commercial outlets such as department stores?

(3) The crafts will be resold only through museums and other non-profit shops and agencies (at present only through museum shops) and not through regular commercial outlets.

Respondent issued Aid to Artisans a proposed adverse ruling letter on November 8, 1976. The following paragraph is the focal point of respondent's letter:

The facts submitted show that your primary purpose is the sale of handicrafts through museums and other nonprofit shops and agencies. The artisans who produce the handicrafts you sell are being directly benefited by the sale of their works, with the result that a major activity of your organization is serving the private interests of those artisans whose works are displayed for sale. While the artisans whose crafts you sell may come from "disadvantaged" communities, you have not shown that the individual artisans themselves are in fact "disadvantaged." Moreover, you do not assist them directly, thereby ascertaining their need (as in Rev. Rul. 68–167, 1968–1 C.B. 255), but rather you acquire their crafts in most instances from craft cooperative groups.

Petitioner protested the proposed ruling and a conference between Aid to Artisans and respondent was held on January 24, 1977. In anticipation of the conference, petitioner's president prepared a memorandum which is part of the administrative record. The memorandum includes the following statements:

The handicrafts of the world are endangered by the growth of industrialization. The handicrafts, if fostered, will continue to provide employment for developing societies in kinds of work which by their very nature are labor-intensive; will be a vehicle for pride of work and human dignity; and will continue to represent a high form of the artistic and cultural tradition of the countries in which they are practiced.

Conversely, if the handicrafts are allowed to die out, the cultural and artistic aims of these societies will be weakened, communities dissipated and important employment opportunites sacrificed.

\*       \*       \*       \*       \*       \*       \*

The IRS has raised questions relative to our determination of "the disadvantaged artisan." It is, and will remain, the policy of [Aid to Artisans] to offer support in the form of initial purchases and eventual grants if possible, to communities of craftsmen rather than individual craftsmen. We are devoting our efforts to the provision of a market for the *anonymous* craft producers who work collectively in craft villages and settlements not to the individual "studio craftsman." For example, we have recently placed orders for toys produced in a single village of Haiti. \* \* \* Other orders, since the inception of [Aid to Artisans] have been placed with cooperatives representing craftsmen living in the earthquake-devastated villages of Guatemala in order to provide employment and the rehabilitation of these villages. \* \* \*

Petitioner replied by memorandum dated January 25, 1977, to respondent's request at conference for written responses to two questions. One question was as follows:

Will you explain how you relate to craftsmen, their representatives, cooperatives, or representative organizations and what is the nature of such representation?

Portions of petitioner's answer are relevant to our inquiry here. Petitioner replied in part as follows:

In establishing working relationships within the three countries thus far developed as "resource countries," Aid to Artisans has developed an on-going relationshp in Mexico with "FONART," (Fomento Nacional Para Las Artsanias), the National Organization for the Development of Mexican Handicrafts.

\* \* \* \* \* \* \*

Similarly, in Haiti, Aid to Artisans works closely with the National Committee for the Promotion of Haitian Handicrafts.

\* \* \* \* \* \* \*

It is our desire and purpose, as Aid to Artisans establishes contacts in other countries, to follow the pattern established thus far in our relationships with these broadly representative organizations in Haiti and Mexico, whose sole purpose is to advance the welfare of disadvantaged craftsmen and to provide them with minimum subsistence employment. We indicated to you, for example, that our efforts during our first year of operation have already resulted in the provision of continuous employment for 80 women in a small Haitian village. These women are paid $2 a day. Were it not for our initiative, they would presumably remain unemployed. In other words, the thrust of our endeavor is to provide employment in selected poverty areas throughout the world to groups of craftsmen who live at a sub-subsistence level. \* \* \*

Respondent issued to petitioner a final adverse ruling letter on February 28, 1977, and ultimately reissued the final adverse ruling letter on April 5, 1977. Respondent's final adverse ruling letter summed up the reasons for denying petitioner exempt status: "You are operated to serve the private interests of the artisans whose handicrafts you sell. You are operated in a manner similar to a commercial import firm."

Aid to Artisans timely filed its petition in this matter seeking a declaratory judgment pursuant to section 7428. The burden of proof in this proceeding is upon petitioner who must show that, on the basis of the contents of the administrative record, respondent erred in his determination. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure. The scope of our inquiry is limited to the propriety of the reasons given by respondent for denying petitioner's application for exempt status. *Houston Lawyer Referral Service, Inc. v. Commissioner*, 69 T.C. 570, 573 (1978). Our decision in this case is based upon the assumption that the facts represented in the certified administrative record are true. Rule 217(b)(1), Tax Court Rules of Practice and Procedure.

The arguments used by respondent in his brief articulate the line of reasoning on which his adverse ruling letters are founded. The argument may be summarized as follows. The purposes of petitioner's operations are to engage in profitmaking commercial activities and to benefit the artisans whose handicrafts are sold. Petitioner sells only handicrafts made by artisans who live in disadvantaged communities, but no precautions are taken to ensure that such artisans are actually disadvantaged themselves. To the extent that petitioner may benefit artisans who are not disadvantaged, petitioner does not benefit a charitable class and serves private rather than public interests within the meaning of section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs. The purpose of petitioner's operations is not an exempt purpose within the meaning of section 501(c)(3), I.R.C. 1954. Petitioner's operations are similar to those of a commercial import firm; they do not further an exempt purpose as required by section 1.501(c)(3)–1(c)(1), Income Tax Regs. Petitioner is not operated exclusively for exempt purposes and is not entitled to exempt status under section 501(c)(3).

Petitioner argues that it is entitled to exempt status under section 501(c)(3). Aid to Artisans contends that its purchase, import, and sale activities serve public rather than private interests, are undertaken in furtherance of charitable purposes, and therefore do not preclude qualification as an exempt organization. The exempt purposes for which petitioner claims to be operated exclusively are: (1) Helping disadvantaged artisans in poverty stricken countries to subsist and to preserve their craft; and (2) furnishing services to tax-exempt museums by providing museum stores with representative handicrafts from disadvantaged countries. Petitioner argues that disadvantaged artisans are a charitable class both because of their economic need or status as disadvantaged and because of their artistic merit or status as artisans; the museums are a charitable class because of their status as tax-exempt organizations.

Section 501(a) exempts from income taxation any organization that meets the criteria of section 501(c)(3). Section 501(c)(3) requires that the applicant for exemption meet six requirements. First, the organizational format of an applicant must be that of a corporation, community chest, fund, or foundation. Second, the applicant must be organized exclusively for one or more exempt purposes. Third, the applicant must be operated

exclusively for one or more exempt purposes. Fourth, no part of the applicant's net earnings may inure to the benefit of a private shareholder or individual. Fifth, carrying on propaganda or influencing legislation must be an insubstantial activity of the applicant. Sixth, the applicant is prohibited from participating or intervening in political campaigns on behalf of a candidate for public office.

The basis for respondent's adverse determination in the instant case is the third requirement noted above, that the applicant must be operated exclusively for one or more exempt purposes. That requirement contains two elements: (1) An exempt purpose element which is described by section 1.501(c)(3)–1(d), Income Tax Regs.; and (2) an operational element which is described by section 1.501(c)(3)–1(c), Income Tax Regs.

The exempt purpose element of respondent's regulations lists the following purposes as exempt purposes: (1) Religious; (2) charitable; (3) scientific; (4) testing for public safety; (5) literary; (6) educational; and (7) prevention of cruelty to children or animals. Sec. 1.501(c)(3)–1(d)(1)(i), Income Tax Regs. A further limitation has been placed upon classification of a purpose as exempt. Section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs., on which respondent relies heavily, provides that an applicant organization must serve public rather than private interests. Additionally, the exempt purpose element allows organizations to retain their exempt status as long as they actually are organized and operated exclusively for exempt purposes, even though such purposes are different purposes than those stated in the application for exemption. Sec. 1.501(c)(3)–1(d)(1)(iii), Income Tax Regs.

The operational element described by respondent's regulations contains three requirements, only one of which is relevant to respondent's determination. Specifically, the relevant requirement of section 1.501(c)(3)–1(c)(1), Income Tax Regs., provides:

(c) *Operational test.* (1) *Primary activities.* An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

This section of the regulations makes a distinction between an

organization's activities and an organization's purposes. We are required first to focus on the organization's primary activities and determine whether they accomplish one or more exempt purposes. Then we must determine whether a substantial or insubstantial part of the organization's activities further nonexempt purposes. If one or more exempt purposes are accomplished by the organization's primary activities and if an insubstantial part of the organization's activities are devoted to the accomplishment of nonexempt purposes, then the organization is operated exclusively for exempt purposes. Note that the presence of profitmaking activities is not per se a bar to qualification of an organization as exempt if the activities further or accomplish an exempt purpose. *Edward Orton, Jr., Ceramic Foundation v. Commissioner*, 56 T.C. 147, 162–164 (1971); *Pulpit Resource v. Commissioner*, 70 T.C. 594, 611 (1978).

The foregoing provisions of respondent's regulations provide a framework, here unchallenged, for determining whether Aid to Artisans is operated exclusively for exempt purposes. It is our task first to identify petitioner's primary activities, second to identify the purposes for which petitioner is operated, third to decide whether such purposes are exempt purposes, fourth to decide whether the primary activities further one or more exempt purposes, fifth to determine whether a substantial part of petitioner's activities further nonexempt purposes, and sixth to determine whether petitioner serves private or public interests. We will begin our analysis by identifying petitioner's primary activities and the purposes for which petitioner is operated.

Respondent's regulations distinguish between the activities and the purposes of an organization. In some cases, the demarcation between an organization's activities and its purposes is unclear. For example, this Court recently decided that a certain organization was carrying on commercial activities and that the primary purpose for which the organization was operated was simply that of "operating a commercial business producing net profits for [the organization]." *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352, 357 (1978). There the organization's primary activities were coextensive with its purposes.

Having been called upon to make a similar distinction, the United States Court of Appeals for the First Circuit formulated the pertinent inquiry as "whether the [organization's] exempt

purpose transcends the profit motive rather than the other way around." *Elisian Guild, Inc. v. United States*, 412 F.2d 121, 124 (1st Cir. 1969), revg. 292 F. Supp. 219 (D. Mass. 1968). In resolving that inquiry, the court followed a test used in *Fides Publishers Association v. United States*, 263 F. Supp. 924 (N.D. Ind. 1967), and *Scripture Press Foundation v. United States*, 152 Ct. Cl. 463, 285 F.2d 800 (1961), cert. denied 368 U.S. 985 (1962). The court contrasted the total amount of profit generated by the organization with the amount of profit retained and the amount of profit expended for exempt purposes.

In the instant case, petitioner's primary activities are the purchase, import, and sale of handicrafts. All profit generated by the operations is earmarked for specific purposes; no profit earned by Aid to Artisans is to be retained. If we find that the purposes for which petitioner is to use the profit are exempt purposes, then we will be convinced that petitioner's commercial activities are not an end unto themselves.

Specifically, the purchase, import, and sale activities of Aid to Artisans and its other activities are undertaken to accomplish four purposes: (1) Alleviation of economic deficiencies in communities of disadvantaged artisans; (2) education of the American public in the artistry, history, and cultural significance of handicrafts from such communities; (3) preservation of authentic handicraft production; and (4) achievement of economic stabilization in disadvantaged communities where handicrafts are central to the economy. Having identified the primary activities of Aid to Artisans and the purposes for which it is operated, we next must decide whether such purposes are exempt.

We have identified four purposes that are furthered by petitioner's activities. The first is the alleviation of economic deficiencies in communities of disadvantaged artisans. Section 1.501(c)(3)–1(d)(2), Income Tax Regs., defines the word "charitable" as including "Relief of the poor and distressed or of the underprivileged." The provision of benefits to disadvantaged artisans fits within this description of charitable purposes. However, respondent argues that petitioner's method of selecting artisans to be benefited allows artisans who are not disadvantaged as well as those who are disadvantaged to receive benefits. Therefore, reasons respondent, petitioner does not benefit a charitable class. We disagree. Aid to Artisans limits the

communities from which it buys handicrafts to those communities which have been objectively determined to be disadvantaged. Aid to Artisans also has stated unequivocally that it will not market the handicrafts of artisans who are not disadvantaged. It bears repeating that the contents of the administrative record are assumed to be true representations of the existing facts for purposes of this proceeding. Rule 217(b)(1), Tax Court Rules of Practice and Procedure. Had the administrative record shown irregularities which cast doubt on petitioner's representation that Aid to Artisans would market only handicrafts produced by disadvantaged artisans, then we would make an appropriate determination. See, e.g., *Church in Boston v. Commissioner*, 71 T.C. 102 (1978). However, no such showing has been made in the instant case and we assume petitioner's representations to be true. Moreover, the type of handicrafts purchased by Aid to Artisans is that which is produced in bulk by a community of craftsmen rather than that which is produced by an individual studio craftsman. The record demonstrates that in one instance, such a community of craftsmen included 80 women living in one Haitian village. The poverty of the overall community, the emphasis on bulk production of similar items rather than limited studio production, and the broad community participation in production are factors that convince us that benefit to artisans who are not disadvantaged is the exception rather than the rule and an insubstantial portion of the overall operation.

It is appropriate here to address respondent's contention that Aid to Artisans does not directly benefit the artisans who produce the purchased handicrafts and cannot discern whether such artisans are disadvantaged. Respondent so argues because petitioner does not purchase handicrafts directly from the artisans but rather purchases handicrafts from craft cooperatives and national craft agencies which represent the artisans' interests. This argument is without merit. The administrative record demonstrates the use of cooperatives, which by definition are instrumentalities of their artisan contributors, and national craft agencies, which are portrayed as being operated for the benefit of the artisans whose handicrafts are sold. We are convinced that the interposition of these organizations in no way changes the charitable nature of petitioner's purposes or the charitable class of the beneficiaries of petitioner's operations.

Petitioner's second and third purposes as listed above are the

education of the American public in the artistry, history, and cultural significance of the handicrafts of specific disadvantaged communities and the preservation of authentic handicraft production from such communities. On the basis of the administrative record in this case, we are convinced that these purposes qualify as exempt charitable and educational purposes within the meaning of section 501(c)(3).

The fourth purpose for which petitioner is operated is the achievement of economic stabilization in disadvantaged communities where handicrafts are central to the economy. This fourth purpose of Aid to Artisans permeates the administrative record and emerges as the organization's ultimate goal. It, too, is an exempt charitable purpose within the meaning of section 1.501(c)(3)–1(d)(2), Income Tax Regs., as the promotion of social welfare by relief of the disadvantaged.

Having determined that the purposes for which Aid to Artisans is operated are exempt purposes, and knowing that all of petitioner's profits are used for one or more of such purposes and not accumulated, we are able to say that the test used in *Elisian Guild, Inc. v. United States*, 412 F.2d 121 (1st Cir. 1969), indicates that petitioner's activities are not coextensive with its purposes. In the instant case, petitioner's primary activities are the purchase, import, and sale of handicrafts. Such activities are not an end unto themselves, but rather are undertaken in order to accomplish certain exempt purposes. Thus, the sale of handicrafts to exempt organizations is neither an exempt purpose as argued by petitioner nor a nonexempt purpose as argued by respondent. Rather, such sale is merely an activity carried on by Aid to Artisans in furtherance of its exempt purposes.

On the basis of the facts contained in the administrative record, petitioner's activities further nonexempt purposes to the extent that nondisadvantaged artisans are benefited by Aid to Artisans. We have concluded that only an insubstantial part of petitioner's activities further such nonexempt purposes and that such nonexempt purposes are likewise insubstantial. The presence of insubstantial nonexempt purposes is no bar to exemption. *Better Business Bureau v. United States*, 326 U.S. 279 (1945).

The remaining inquiry is whether petitioner serves private or public interests. Respondent argues that petitioner serves the

private interests of the artisans whose handicrafts are sold and is, therefore, not entitled to exempt status. Respondent has cited no case law to support his position and has neither determined nor argued that petitioner violates the requirement of section 501(c)(3) that no part of the organization's net earnings inure to the benefit of any private shareholder or individual. Instead, respondent's argument relies wholly upon section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs., which provides as follows:

An organization is not organized or operated exclusively for one or more of the purposes specified in subdivision (i) of this subparagraph unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests.

None of the "private interests" used as examples in the foregoing language are present in the case before us. Respondent has not offered to explain what "private interests" are or how they are defined or whether service of such interests differs from inurement to the benefit of private shareholders or individuals. Respondent simply asserts that such interests are served by Aid to Artisans. The Supreme Court addressed itself to a similar problem, private gain, in *Trinidad v. Sagrada Orden de Predicadores,* 263 U.S. 578, 581 (1924). "Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain." The questions whether an organization serves private interests within the meaning of the quoted regulation and whether an organization's activities are conducted for private gain within the meaning of *Trinidad v. Sagrada Orden de Predicadores, supra,* may be resolved similarly. The questions may be resolved by examining the definiteness and charitable nature of the class to be benefited and the overall purpose for which the organization is operated. Cf. *United States v. Proprietors of the Social Law Library,* 102 F.2d 481 (1st Cir. 1939), affg. 21 F. Supp. 462 (D. Mass. 1937). In the instant case, we have determined that "disadvantaged artisans" comprise a charitable class. The indefinite description of the class as "disadvantaged artisans" and the method of petitioner's selection of handicrafts evidences no selectivity with regard to the identities of the individual

artisans to be benefited. The overall purpose for which Aid to Artisans is operated is to provide benefits to disadvantaged communities. In short, the administrative record convinces us that petitioner serves a public interest and that petitioner's activities are not conducted for private gain.

On the basis of the administrative record in this case, we have decided that Aid to Artisans is operated exclusively for exempt purposes, that Aid to Artisans qualifies as an organization described by section 501(c)(3), and that Aid to Artisans is, therefore, entitled to an exemption from income tax pursuant to section 501(a). This opinion is premised on the assumption that the administrative record contains an accurate representation of the facts concerning petitioner's operations. The application for exemption was filed during an early period of petitioner's existence and was based in large part upon operational projections. Needless to say, conformity with the requirements for exemption must be maintained in actual operations to assure continuity of exempt status.

*An appropriate decision will be entered.*